## Rebecca Cram & a. *v.* Enoch C Hadley.

Exemplary damages are only to be given in case of fraud, malice, gross negligence or oppression.

The court erroneously instructed the jury, with the assent of counsel for defendant, that they might give exemplary damages in the case if they saw fit, when there was no evidence that warranted such instructions. After verdict for plaintiff, and a motion by defendant to set the same aside as against the law and the evidence ; *held*, that if it did not appear affirmatively from the verdict or the evidence reported, whether any exemplary damages were given, or if any, how much, the verdict would not, under these circumstances, be set aside ; while if defendant's counsel had seasonably objected to the instructions given, and requested the proper instructions, the entire verdict under similar circumstances would be set aside. But when it appears affirmatively, either by the verdict or the evidence reported, that exemplary damages were given, and to what amount, the court will, even under the circumstances of this case, correct the error in the verdict, by ordering a *remittitur* for such exemplary damages, and allowing the plaintiff to take judgment for the residue.

Where a trade was negotiated between the plaintiff and defendant by a third person, one B., and the question is, "What was the understanding of the two parties in relation to the trade?" after the terms of the offer or proposition which the defendant made to B. are shown by competent evidence, then it may be shown either by B. *or by the plaintiff*, that the same offer or proposition was communicated by B. to the plaintiff and accepted by him.

Trespass *quare clausum*, for entering upon land of the plaintiffs and carrying away logs. Writ dated April 5, 1867.

One M. M. Hadley, a brother of the defendant, conveyed the land to the plaintiffs by deed delivered Jan. 7, 1867, in pursuance of a verbal agreement made or an understanding had in the autumn of 1866. The logs were cut on the land before said autumn and remained there till March, 1867, when they were carried away by the defendant and two other persons, as the servants of said M. M. Hadley.

It did not appear that the plaintiff Nichols took any part in the agreement made in the autumn of 1866. The only question beside damages, submitted to the jury, was whether the plaintiff, Mrs. Cram, and said M. M. Hadley agreed or understood that the logs were included in the sale of the land.

One Bartlett, a brother of Mrs. Cram, testified that, at Mrs. Cram's request in said autumn, he asked M. M. Hadley what he would take for the land ; that Hadley said $1200 ; that he asked if he would throw in the logs, and Hadley said yes ; that at that time he did not inform said Hadley that he was negotiating for Mrs. Cram.

Mrs. Cram testified that she requested Bartlett to go to M. M. Hadley to see about buying the land, [that afterwards Bartlett told her that M. M. Hadley said he would take $1200 for the land and throw in the logs ;] that she afterwards told M. M. Hadley that she would take the land as her brother bargained for it.

(That part of her testimony included in brackets was received subject to defendant's exception.)

The defendant testified that, at the request of his brother, he went with him to Mrs. Cram, March 19, 1867, to hear what she would say about the logs, and that he made a minute of the time ; that his brother asked her if he didn't tell her he would not throw in anything, and she

said yes; that his brother asked her again and she said he would not throw in much of anything; that she spoke of telling him that she should take the land as her brother bought it, and that she claimed the logs.

There was no evidence to sustain a claim for exemplary damages except what appears in this case.

The plaintiffs' counsel claimed damages only for the value of the logs and exemplary damages.

Upon the question of the right of the defendant to carry away the logs, which was treated as the only point of any considerable consequence in the case, counsel on both sides properly argued the case to the jury, as if said M. M. Hadley were the defendant.

In the commencement of the charge given to the jury, counsel on both sides being present, the court remarked incidentally that it would seem to be proper to consider the case substantially as between Mrs. Cram and M. M. Hadley. The court then instructed the jury upon the main question in the case, and in closing gave instructions concerning exemplary damages, without calling the attention of the jury specially to the fact that, as to exemplary damages, this defendant and M. M. Hadley might stand upon different ground. There was nothing in the case that seemed to the court to justify exemplary damages against the defendant or said M. M. Hadley.

The defendant's counsel, in argument, stated that this case belonged to a class of cases in which the law allows the jury to give exemplary damages, and he argued that, in fact under the circumstances of this case, such damages ought not to be given.

The plaintiffs' counsel in closing claimed exemplary damages.

The court instructed the jury that this case belonged to a class in which the law allows the jury to give exemplary damages, and that it was for the jury to determine whether, under the circumstances of this case, such damages ought to be given.

The defendant's evidence tended to show that the logs at the time they were carried away were worth $42.29, and the defendant's counsel, in argument, admitted that they were worth that sum, and the plaintiffs' counsel, in argument, referred to that evidence, and did not claim that they were worth more than $42.29.

The jury returned a verdict for the plaintiffs for $94.27.

The defendant moved to set aside the verdict, on the ground of error in the admission of that part of Mrs. Cram's testimony which was admitted subject to exceptions, and error in the instructions given to the jury, and because the verdict was against the law and the evidence.

The attention of the court was not called to any error in the instructions given to the jury till after the verdict.

Case reserved.

*Morrison & Stanley,* for defendant.

The testimony of Mrs. Cram as to the statements of Bartlett in regard to the declarations of M. M. Hadley that he would take $1200 for

the land and throw in the logs, was not properly admitted. The case finds that Hadley did not know at the time he held this conversation with Bartlett, that he (Bartlett) was negotiating for Mrs. Cram. Under these circumstances, it does not follow by any means that Hadley must be bound by the same offer he made Bartlett to any other party that might wish to buy the same property afterwards.

Hadley's statements, when introduced as evidence in the case in the manner it was by the testimony of Mrs. Cram, are liable to all the objections that can be urged against hearsay evidence. *Davis* v. *Sanders*, 11 N. H. 259; *Wood* v. *Banks*, 14 N. H. 101.

There was no evidence to sustain a claim for exemplary damages. On the contrary, the facts found in the case clearly show that the plaintiffs have no claim to any damages beyond the value of the property removed. The action brought was trespass *qu. cl.*, for entering upon land of the plaintiffs and carrying away logs. There was not the least evidence in the case tending to show that there was any aggravation or wanton and malicious conduct on the part of the defendant towards the plaintiffs in entering upon the land and carrying away the logs as he did.

There was strong evidence tending to show that the defendant was acting in accordance with a verbal agreement made or an understanding had by M. M. Hadley with one of the plaintiffs, Mrs. Cram, the case being considered as substantially between Mrs. Cram and M. M. Hadley. The general rule is well settled, as laid down in Kent's Com. vol. 1, note a, page 629, and cases there cited: "If a case be free from fraud, malice, wilful negligence, or oppression, the compensation is taken strictly for the real injury or actual pecuniary loss to the party. In cases of loss without aggravation or intentional wrong, the law confines itself to a complete indemnity without adding exemplary damages, or estimated profits, or estimated consequences."

The value of the logs was $42.29, as claimed by the plaintiffs and admitted by the defendant. The verdict of the jury for the plaintiffs was $94.27; being more than double the real injury or actual pecuniary loss.

This case is simply this: M. M. Hadley sold a farm to the plaintiffs on which were certain logs cut and piled. He claimed that they did not pass by the deed and that he reserved them. The plaintiffs claimed that they were to go with the land. The defendant, under a claim of right, removed them, doing no injury to the plaintiffs' land. The value of the logs was $42.29. The verdict of the jury was for $94.2*l*. This simple statement of the case is sufficient to show that the verdict of the jury is against the law and the evidence, and being so must be set aside.

*Sawyer & Sawyer, Jr.*, for plaintiffs.

1. The objection to that part of Mrs. Cram's testimony which relates to the statement to her by Bartlett of what M. M. Hadley said, is not well taken. The question in the case upon which the verdict hinged, was whether Mrs. Cram and M. M. Hadley agreed that the logs should be

included in the sale.   That Hadley so agreed was shown by the testi-
mony of Bartlett.   How could Mrs. Cram's assent or agreement to the
terms proposed or assented to by Hadley be shown without proof that
those terms were communicated to her?   Without such proof the jury
might well have found that, though Hadley had assented, she had not.
In this view, the fact that his terms were made known to her is material,
and the evidence that Bartlett told her what his terms were was there-
fore competent.   Bartlett himself testified that Hadley told him he
would sell for $1200, and throw in the logs.   The evidence of Mrs.
Cram was not to prove the fact that Hadley agreed to throw in the logs,
but merely to show that she was informed what his terms were, and to
which she agreed.   Neither of the cases cited by the defendant's coun-
sel—one from the 11th, and the other from the 14th volume of N. H.
Reports—have any application to this case.

2.   As to the question whether the verdict is against evidence, the
case finds merely that the defendant's evidence tended to show that the
logs were worth but $42.29.   The jury, from the description of the logs
or other competent evidence, may nevertheless have found that they were
worth $94.27.   The fact that the plaintiffs' counsel, in argument, re-
ferred to the defendant's testimony relative to the value of the logs, and
did not claim that they were worth more, merely shows that probably
the counsel trusted more to the judgment of the jury as to their value
than his own.

The court, taking the views of both counsel that the case was a prop-
er one for exemplary damages, instructed the jury on that point precise-
ly as both of them agreed was right.   Upon what ground can the de-
fendant now claim that the instructions given were wrong?   After tak-
ing his chance for a verdict upon these instructions, it is too late to ob-
ject that the instructions given, to which he then assented, were not
right, or that different instructions, for which he did not then ask, were
not given.

Sargent, J.   We think the verdict should be set aside, at least as
far as the exemplary damages are concerned, as being against the law
and the evidence.   It is only where "the elements of fraud, malice,
gross negligence or oppression mingle in the controversy," that exem-
plary damages are to be given.   Sedgwick on Damages, 39.   And
however the jury might have found in regard to M. M. Hadley if he
had been a party, we see no evidence tending to show that this defend-
ant was fraudulent, malicious, grossly negligent or oppressive in any-
thing he did in this matter.   All the defendant was shown to have known
about the matter, was what he learned at the interview between plaintiff
and his brother, as stated by him, and the case finds affirmatively that
there was no other evidence but this to sustain the claim for exemplary
damages.   Fraud, malice, &c., will not be presumed without proof,
and we think there was no proof of either; and the presiding justice
who tried the cause certifies that there was nothing in the case that
seemed to justify exemplary damages.

But the whole verdict should not be set aside for this cause if the

plaintiffs will remit the exemplary damages.    Where a verdict has been returned for a sum in damages too large, but the excess can be readily computed, and the plaintiff will remit the same, the verdict will not be set aside. *Pierce* v. *Wood*, 23 N. H. 519 ; *Sanborn* v. *Emerson*, 12 N. H. 58 ; *Willard* v. *Stevens*, 24 N. H. 271 ; *Odlin* v. *Gove*, 41 N. H. 478.    These cases generally refer to mistakes of the jury, but we see no reason why the same rule may not apply to mistakes of the counsel and the court, as in this case.    *Cross* v. *Wilkins*, 43 N. H. 332.

If the actual damages could not be separated from the exemplary, or if the evidence had been such that there could be doubt as to whether any exemplary damages were given, then, under the circumstances of this case, it would not be proper to set aside an entire verdict, a part of which was properly found, and the whole of which might be so ; while, if the defendant had seasonably excepted to the erroneous ruling, and requested proper instructions, the entire verdict would, under similar circumstances, have been set aside.    But where the error and the amount of it distinctly appears, as in this case, there is no good reason why the court should not correct it even now, since it can be done with certainty and consistently with the exact rights of all parties.

The statement of Mrs. Cram as to what Bartlett told her would seem at first to be hearsay ; and as Bartlett was a competent witness for both sides, he might have stated not only the offer which Hadley made to him, but the information which he conveyed to Mrs. Cram in relation to that offer, and the jury might then have settled the question, upon that evidence, how the parties understood the trade relative to the logs.

But as the parties are now witnesses in chief, it may have been competent for Mrs. Cram to state what the offer was, which was communicated to her from M. M. Hadley, and which she intended to accept, as this would show what she understood the bargain to be.    Then other proof must be introduced to show what Hadley did in fact offer and agree to.

Mrs. Cram's statement that Bartlett told her that Hadley made a certain offer or proposition would not be competent as tending to show that Hadley ever did make any such offer or proposition.    Whether he did or not must be proved by other and competent testimony, but could not be proved by hearsay, such as Mrs. Cram's statement of what Bartlett had said about it out of court clearly would be.    But after Mrs. Cram had stated what was communicated to her as the offer, and how she thus understood the bargain, then it must be proved that Hadley did in fact make such offer ; that he did understand that the logs were included in the sale.    And such evidence was produced.    Bartlett was called as a witness and testified fully as to what Hadley said to him, what offer or proposition he made to him, and all the particulars as to that interview and negotiation.

Our impression is that Mrs. Cram's statement may have been competent for one purpose, that is, to show what the offer was that was communicated to her, and which she intended to accept, and if so, it was

properly admitted, and it is to be presumed that proper instructions were given to the jury in relation to it.

The defendant would not have failed, of course, after such evidence was introduced for a special and specific purpose, to ask for instructions that such evidence was entirely incompetent to prove, and was not to be considered by the jury as tending to prove, that Hadley did in fact make such offer to Bartlett. That fact, if it was a fact, must stand upon its own ground, and be proved by competent evidence, not by hearsay ; and if the court had not, in pursuance of such request, so instructed the jury, we should have found an exception taken, which must, of course, have availed the defendant here. But no such exception appears. With proper instructions to the jury on that point, which we are to presume to have been given, we think the ruling was well enough.

What Bartlett said to Mrs. Cram would be entirely immaterial and incompetent, whether stated by him or her, unless it should be proved that Hadley had authorized him to make the statement which he did make to her ; but if that fact is proved by competent evidence, it is immaterial whether Bartlett or the plaintiff Mrs. Cram states the communication that was made to her ; and if the same offer or proposition that Hadley made to Bartlett was in fact communicated to the plaintiff, then they both understood the matter alike, and the trade was made accordingly.

The plaintiffs may enter a *remittitur* for the exemplary damages, and take judgment for $42.29, with interest thereon from March, 1867.